IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

HOWARD G. PATTON,

        Plaintiff,                      Case No. 6:11-cv-06423-ST

    v.

MICHAEL J. ASTRUE, Commissioner,        FINDINGS AND RECOMMENDATION
Social Security Administration,

        Defendant.

STEWART, Magistrate Judge.

        Plaintiff, Howard G. Patton ("Patton"), seeks judicial review of the final decision by the

Social Security Commissioner ("Commissioner") denying his application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 USC §§ 1381-

1382f.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC

§ 1383(c)(3).  For the reasons set forth below, that decision should be reversed and remanded for

further proceedings.

1 - FINDINGS AND RECOMMENDATION

## ADMINISTRATIVE HISTORY

On November 12, 2008, Patton protectively filed an application for SSI, alleging a disability based on back pain, headaches, and anxiety.  Tr. 95-101, 123-24, 127-28.[1]  Although he alleged an onset date of January 1, 1985 (Tr. 95), SSI is not payable prior to the month following the month in which the application was filed.  20 CFR § 416.335.   His application was denied initially and on reconsideration.  Tr. 55-58, 64-65.

On September 14, 2010, Administrative Law Judge ("ALJ") Edward Hein conducted a hearing at which Patton and a vocational expert testified.  Tr. 32-51.  On October 28, 2010, the ALJ issued a decision finding that Patton was not disabled since November 12, 2008.  Tr. 8-24.  On November 11, 2010, Patton requested administrative review.  Tr. 7.  On October 27, 2011, the Appeals Council denied review.  Tr. 1-6. Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court.  20 CFR §§ 404.981, 442.210.

## BACKGROUND

Patton was born in 1965 and obtained a high school diploma.  Tr. 47.  He has performed scant work and was last employed in 1997.  Tr. 114.  Patton acknowledges a long history of alcohol use and daily marijuana use, beginning while he was in the sixth grade.  Tr. 266, 275.  His drug use ended in approximately January 2009, after he was arrested for selling marijuana.  Tr. 266.

///

///

---

[1]  Citations are to the page(s) indicated in the official transcript of record filed on June 1, 2012 (docket #12).

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled under the meaning of the Act. 20 CFR § 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR § 416.920(a)(4)(I) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR § 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR

§ 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  In making

a RFC finding, the ALJ must consider all symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 CFR § 416.929.

In considering the claimant's symptoms, the ALJ must follow a two-step process.  First,

the ALJ must determine whether there is an underlying medically determinable physical or

mental impairment, as shown by medically acceptable clinical and laboratory diagnostic

techniques, that could reasonably be expected to produce the claimant's pain or other symptoms.

SSR No. 96-7p, p. 6, 1996 WL 374186 (July 2, 1996).  Second, the ALJ must evaluate the

intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to

which they limit the claimant's ability to do basic work activities.  *Id*.  For the latter inquiry,

"whenever the individual's statements about the intensity, persistence, or functionally limiting

effects of pain or other symptoms are not substantiated by objective medical evidence, the

adjudicator must make a finding on the credibility of the individual's statements based on a

consideration of the entire case record."  *Id*.

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant

work.  20 CFR § 416.920(a)(4)(iv) & (e).  If the claimant cannot perform past relevant work,

then at step five, the ALJ must determine if the claimant can perform other work in the national

economy.  *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099; 20 CFR

§ 416.920(a)(4)(v) & (g).

4 - FINDINGS AND RECOMMENDATION

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC.  *Id*.  If the Commissioner meets this burden, then the claimant is not disabled.  20 CFR §§ 416.920(a)(4)(v) & (g), 416.960©.

If the claimant is found to be disabled and there is medical evidence of substance abuse, the ALJ must engage in the sequential five-step inquiry a second time without taking the claimant's substance abuse into account for the purpose of determining whether drug addiction or alcoholism "is a contributing factor material to the determination of disability."  20 CFR § 416.935(a).  It is a "material factor" when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol.  20 CFR § 416.935(b).  A claimant is not considered disabled and is ineligible for benefits if drug addiction or alcoholism is a contributing factor material to the determination of disability.  42 USC § 1382c(a)(3)(J); *see also Bustamante v. Massanari*, 262 F3d 949, 955 (9th Cir 2001).  In such determinations, the claimant bears the burden to prove that drug addiction or alcoholism is not a contributing factor material to his disability.  *Ball v. Massanari*, 254 F3d 817, 821 (9th Cir 2001).

## ALJ'S FINDINGS

At step one, the ALJ found that Patton has not engaged in any substantial gainful activity since the application date of November 12, 2008.  Tr. 13.

At step two, the ALJ determined Patton suffers from the severe impairments of major depressive disorder, panic disorder with agoraphobia, and polysubstance abuse.  *Id*.  The ALJ also found that Patton has exhibited symptoms of, or has been diagnosed with, obesity and

asthma, but deemed them to be non-severe. *Id*. At step three, the ALJ found that Patton's

impairments, either singly or in combination, did not meet or equal the requirements of a listed

impairment. Tr. 13-14.

Because Patton did not establish disability at step three, the ALJ continued to evaluate

how Patton's impairments affected his ability to work. The ALJ found that Patton had the RFC

to "perform a full range of work at all exertion levels," but with the following nonexertional

limitations:

> [Patton] can understand, remember and carry out simple, routine tasks and
> instructions. He should avoid direct public contact. [Patton] should be
> placed in a slow-paced work environment without frequent interruptions
> throughout the day and should avoid hazardous settings.

Tr. 14-15.

At step five, the ALJ found that considering Patton's age, education, and RFC, he was

capable of performing the requirements of representative occupations such as laundry worker,

cleaner, or folder. Tr. 19. Thus, the ALJ found Patton not disabled. *Id*.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record. 42 USC §§

405(g), 1383(c)(3); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the

evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d

1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The

reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r*

*of Soc. Sec.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir

2007), *cert denied*, 552 US 1141 (2008).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## FINDINGS

Patton alleges the ALJ erred by: (1) failing to follow the  correct procedure in analyzing his substance abuse; (2) failing to give sufficient reasons to reject the consulting examiner's opinion; (3) failing to give sufficient reasons to reject the treating counselors' opinions; (4) failing to properly evaluate his obesity, asthma, and back pain at step two; and (5) accepting the vocational expert's identification of jobs beyond his reasoning level.

## I.    Substance Abuse

Patton first argues the ALJ erred in not following the appropriate procedure in analyzing the effect of his substance abuse on his limitations.  Patton argues the ALJ performed only one five-step analysis, instead of the required two separate analyses.

Patton seems to misunderstand the critical point that the drug and alcohol analysis ("DAA") is only performed if the ALJ first finds that the claimant has a disability.  20 CFR § 416.935(a).  The Ninth Circuit has made clear that "an ALJ *should not* proceed with the analysis under . . . § 416.935 if he has not yet found the claimant to be disabled under the five-step inquiry."  *Bustamante*, 262 F3d at 955 (emphasis added).  "[A]n ALJ must *first* conduct the five-step inquiry without separating out the impact of [substance abuse].  If the ALJ finds that the

claimant is *not disabled* under the five-step inquiry, then the claimant is not entitled to benefits and *there is no need to proceed* with the [DAA] analysis." *Id* (emphasis added).

Here the ALJ conducted the initial five-step inquiry without factoring out the impact of Patton's drug use. The ALJ included "polysubstance abuse" as one of Patton's severe impairments, yet concluded that Patton was able to work and not disabled, even with his substance abuse problems. Tr. 13. The ALJ found that Patton's drug use "perhaps affects his functionality by diminishing his motivation to seek lawful employment," but that he is able to participate in a "wide range of daily activities" and "care for his two teenage children without noticeable interference." Tr. 17. These findings led the ALJ to conclude that Patton was able to work and, thus, was not required to conduct an additional five-step inquiry to determine the effect of Patton's drug use on his disability.

## II.    Consulting Psychologist's Opinion

Patton next contends that the ALJ failed to give sufficient reasons to grant "little weight" to the opinion of Ryan Scott, Ph.D., a consulting psychologist. Tr. 17.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir 2002), quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989). When the medical opinion of an examining or treating physician is uncontroverted however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas* 278 F3d at 957; *see also Lester v. Chater*, 81 F3d 821, 830-32 (9th Cir

1996).  A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F3d at 1041.

Dr. Scott performed a comprehensive psycho-diagnostic evaluation of Patton on July 9, 2009, at the request of the Disability Determination Services ("DDS")[2] specifically to examine depression and suspected "secondary gain"  Tr. 273.  Based on a review of the record, an interview, and mental status testing, Dr. Scott found that Patton "has some mild problems with depression, but more significant problems with anxiety" and met the criteria for cannabis dependence.  Tr. 277.  He opined that "[i]n regards to activities of daily living it appears that Mr. Patton is relatively functional when doing things around his house but as soon as he is asked to do anything outside of his house, he breaks down and has significant difficulties."  *Id*.

The ALJ gave two reasons to accord "little weight" to Dr. Scott's opinion.[3]  Tr. 17.  First, he found that it was "not consistent with the majority of evidence throughout the record."  *Id*.  In support, the ALJ cited contradictory portions of the record..  Patton reported to Dr. Scott that he had panic attacks when shopping, interacting with co-workers, and when on the bus.  Tr. 277.  The ALJ noted that, in contrast, Patton's prior reports of panic attacks "focus almost exclusively on using the bus," that he had "acknowledged using coping mechanisms (reading, headphones) to assist him in using public transportation," and that he "reported that ability to use the bus frequently, and was able to use it to attend all of his counseling appointments for over a year with

---

[2]  DDS is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 USC § 421(a).

[3]  The ALJ did adhere to Dr. Scott's opinion in part, though, as the RFC includes the limitation that Patton "avoid direct public contact."

only a short break allegedly due to panic." Tr. 17.  All of those reasons regarding Patton's use of the bus are supported by the record.  Tr. 41-42, 244, 263, 271, 307, 355.   The ALJ also noted that Patton "frequently and often leaves his home and there is scant evidence of 'significant difficulties' in doing so, as indicated by his frequent medical appointments, running errands, going  shopping, and going into town." Tr. 17-18, 41, 157-59.  The ALJ observed that the fact Patton "would prefer not to use the bus is different than an inability to use the bus." Tr. 18. Such inconsistencies in the evidence support a legitimate reason to reject a medical opinion.  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F3d 595, 601-02 (9th Cir 1999) (affirming rejection of a medical opinion that was inconsistent with claimant's activities of daily living).

Second, the ALJ found that Dr. Scott's opinion was "based primarily on [Patton's] subjective complaints." Tr. 17.  This also is a valid reason to discount a medical opinion.  *See Bayliss v. Barnhart*, 427 F3d 1211, 1217 (9th Cir 2005) (affirming an ALJ's decision to discount an opinion based on claimant's subjective complaints).  Dr. Scott did review Patton's prior treatment records and was able to observe Patton.  However, his report focuses on Patton's statements that "he would do much better if left to his own devices," that he has panic attacks "every time" he shops, interacts with others at work, and rides the bus, that he fears "the worst happening, fear of dying, trembling or shaking, chest pain or discomfort," and that he fears having a panic attack and dying at work.  Tr. 277.  Based on those statements, the ALJ could rationally conclude that Dr. Scott's opinion is "primarily" based upon Patton's subjective complaints.

Thus, the ALJ gave sufficient reasons based on substantial evidence in the record to accord "little weight" to the opinion of Dr. Scott.  Accordingly, the ALJ did not commit error in that regard.

**III.**     **Treating Counselors' Opinions**

Patton also argues the ALJ gave insufficient reasons to reject the opinions of two counselors, Patti Bear, MA, QMHP, and Jen Dygert, MSW, LCSW, who treated Patton at Options Counseling Services of Oregon, Inc. ("Options") in 2009.

Only "acceptable medical sources" can give medical opinions to establish the existence of a medically determinable impairment.  20 CFR §§ 416.913(a), 416.927(a)(2).  "Acceptable medical sources" include licensed physicians and licensed psychologists, but not licensed clinical social workers and therapists.  20 CFR § 416.913.  Counselors and social workers are, however, considered "other sources" and the ALJ must consider their opinions.  SSR 06-03p, 2006 WL 2329939 (Aug. 6, 2006) (discussing treatment of "other source" opinion evidence).  Opinions from other sources should be evaluated based on the nature and extent of the source's relationship with the claimant, the source's expertise in relation to the claimant's impairments, whether the opinion is consistent with other evidence, whether the opinion is supported by the relevant evidence, how well the source explains the opinion and any other factors.  SSR 06-03p at * 4-5. Nevertheless, the ALJ may discount opinions from "other sources" for reasons germane to each source.  *Molina v. Astrue*, 674 F3d 1104, 1111 (9th Cir 2012).

On January 16, 2009, Bear evaluated Patton and prepared the Options intake report. Tr. 244-50.  Based on Patton's symptoms, history, and mental status exam, she diagnosed an

Anxiety Disorder Not Otherwise Specified and recommended mental health therapy.  Tr. 248.

As the ALJ correctly noted, Bear checked boxes indicating that Patton has "a normal attitude,

mood, memory, and thought content, free of hallucinations."  Tr. 16, 248-49.  He also adopted

Patton's statements to Bear about his difficulties sleeping and riding the bus and that he sought

treatment at Options for the purpose of improving his SSI application.  Tr. 15, 244, 249.

However, he rejected Bear's diagnosis of an anxiety disorder because she "is not considered an

acceptable medical source.  Tr. 16.  In that regard, he did not err.

Dygert treated Patton at Options in February and March 2009.  Tr. 258-64.  On

September 14, 2010, she completed a questionnaire from Patton's attorney in which she listed a

diagnosis of anxiety disorder and opined that his symptoms would interfere with his ability to

work based on his inability to "do well with a critical supervisor or a supervisor who watches

over him"  and his "difficulty with riding a public transportation system."  Tr. 394.  She also

completed a Mental Residual Functional Capacity form in which she found Patton from

moderately to markedly limited in his ability to maintain attention, concentration, and pace, to

interact with the public, to accept instruction, to travel in unfamiliar places or use public

transportation, and to set realistic goals.  Tr. 396-99.

The ALJ granted Dygert's opinion "some consideration as a treatment provider," in

particular with respect to Patton's "anxiety while on the bus and in crowded places," but

correctly rejected it as to Patton's "functionality" because she "is not an acceptable medical

source."  Tr. 18.  He also concluded that Dygert's "own records do not reflect any objective

problems with [Patton's] concentration, persistence and pace, and [Patton] has shown himself

able to maintain concentration and attention to a certain degree." Tr. 18. Both of those

conclusions are supported by the record. First, Patton's treatment focused largely on attempting

to be a better parent to his children and reducing his anxiety on the bus, but contain no mention

of any difficulty with concentration, persistence and pace. Tr. 259-63, 307-21. Second, Patton

did demonstrate an ability to maintain concentration and attention on the tests administered by

Dr. Scott. Tr. 273-80.

Thus, the ALJ gave sufficiently germane reasons supported by substantial evidence in the

record to reject portions of Bear's and Dygert's opinions. Accordingly, the ALJ did not err in

that regard.

## IV.    Obesity, Asthma, and Back Pain

Patton further contends the ALJ erred at step two in failing to consider Patton's back pain

and whether a combination of his asthma and obesity (and the other impairments) constitutes a

"severe impairment." Patton also seems to argue the ALJ erred at step five because the RFC

does not reflect any limitations from Patton's asthma and because the jobs the vocational expert

("VE") identified all involved ventilation concerns.

At step two, the ALJ determines whether the claimant has a severe medically

determinable impairment or combination of impairments. 20 CFR § 416.920(a)(4)(ii). To be

"severe," an "impairment or combination of impairments [must] . . . significantly limit[] [the

claimant's] ability to do basic work activities." 20 CFR § 416.920(c). To be "medically

determinable," an impairment "must be established by medical evidence consisting of signs,

symptoms, and laboratory findings," and must have lasted or be expected to last at least 12

months.  20 CFR §§ 416.908, 416.909, 416.920(a)(ii).  An impairment or combination of

impairments may be found "not severe only if the evidence establishes a slight abnormality that

has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433

F3d 683, 686-87 (9th Cir 2005).

The ALJ considered the medical record and concluded that Patton's "major depressive

disorder, panic disorder with agoraphobia, and polysubstance abuse" constitute severe

impairments.  Tr. 13.  The ALJ also concluded that Patton's medically determinable obesity and

asthma conditions in combination are not severe:

> [Patton's] asthma is controlled by medication, including Advair and
> Albuterol (Ex. 5F, pg. 1).  There is no evidence that [Patton's] obesity
> impacts his functional ability.  The objective medical evidence does not
> indicate that these impairments have caused significant vocational
> limitations for at least 12 consecutive months, therefore they are deemed
> non-severe.

*Id*.

Substantial evidence in the record supports the ALJ's conclusion.  Patton testified that his

last (and first) asthma attack was several years prior and that the inhalers worked "pretty well."

Tr. 39.  Moreover, no evidence in the record indicated that Patton's obesity impacts his

functional abilities.  To the contrary, the evidence supports the ALJ's finding that Patton

"engage[es] in a wide range of daily activities."  Tr. 16.

With respect to Patton's back pain, Patton reported in August 2008 that he had "mostly

low back pain" for years and he was "[i]nterested in medical marijuana for [his] back."  Tr. 218.

After an examination, a nurse practitioner concluded Patton was a poor candidate for medical

marijuana and suggested an x-ray which Patton did not obtain.  Tr. 219.  In September 2008, a

medical doctor examined Patton and found "no neuropathy." Tr. 216.  In January 2009, Patton reported his back pain was better and had not increased since discontinuing pain medication one week prior.  Tr. 254.  Patton reported back pain in June 2009, but sought medication only for use at night.  Tr. 381.  Patton exhibited "no neuro symptoms" and reported that the back pain "is better when he DOES do exercises," but admitted he had not been doing them.  *Id* (emphasis in original).  Accordingly, the ALJ did not err by excluding back pain as a severe impairment.

To the extent Patton challenges the jobs selected by the VE, he speculates his asthma condition might preclude him from working as a laundry worker, cleaner, and folder.  As noted, however, the record contains no evidence that medication fails to control Patton's asthma.  Thus, the ALJ did not err in not including additional limitations in the RFC assessment.

Finally, the jobs identified by the VE by definition do not necessarily require work in "poorly ventilated areas."  The Dictionary of Occupational Titles ("DOT")[4] contains the definitions for laundry worker (DOT #361.685-018), cleaner (DOT #381.687-018), and "folder (laundry & rel.)" (DOT #369.687-018).  None of the three job descriptions indicate they involve poor ventilation.  Thus, the absence from the RFC assessment of any limitation stemming from Patton's obesity and asthma does not impact the ALJ's determination at step five.  *See Stubbs-Danielson v. Astrue*, 539 F3d 1169, 1174 (9th Cir 2008) (failure to include limitations in the RFC was harmless where the jobs identified for claimant did not include those limitations).

///

---

[4]  The DOT is a Department of Labor publication that identifies duties for jobs and the abilities necessary to perform those duties. See Dictionary of Occupational Titles (4th ed.1991), available at http://www.oalj.dol.gov/libdot.htm.

V.    <u>**Reasoning Ability**</u>

Finally, Patton asserts that the ALJ erred at step five of the sequential evaluation process because the VE's testimony about the available jobs which would accommodate his RFC was not consistent with the DOT.

At step five of the sequential evaluation process, the ALJ must consider the RFC of the claimant in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *Yuckert*, 482 US at 142; 20 CFR § 416.920(a)(4)(v) & (g).  The Commissioner can meet this burden by relying on the testimony of a VE or by reference to the Medical-Vocational Guidelines ("grids") set forth at 20 CFR Part 404, Subpt. P, appendix 2.   If the VE's testimony as to the requirements of a position conflict with the DOT's specifications, the ALJ has "'an affirmative responsibility' to inquire as to the reasons and evidentiary basis for the VE's decision."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F3d 1219, 1234 (9th Cir 2009), citing SSR 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000); *Tommasetti*, 533 F3d at 1042.

The DOT for each of the three jobs identified by the VE requires Level Two reasoning on the scale of General Educational Development.   DOT, §§ 7, 9.  Level Two reasoning in turn, requires the ability to "apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions."  DOT, App. C § III (emphasis added).

According to Patton, a job requiring Level Two reasoning exceeds his RFC limited to "simple, routine tasks and instructions."  According to the Commissioner, Patton's RFC does not conflict with the reasoning levels required for a laundry worker, cleaner, or folder.  In support,

the Commissioner points to the Ninth Circuit's unpublished opinion in *Temple v. Callahan*, No. 96-55024, 1997 WL 289457, at *1-2 (9th Cir 1997) (unpublished), holding that an RFC to perform "short and simple instructions" is consistent with a "reasoning level of two" within DOT.  The Commissioner also cites *Meissl v. Barnhart*, 403 FSupp2d 981, 984-85 (CD Cal 2005), which concluded that the Social Security Administration and the DOT do not use the words "simple" or "detailed" in the same way and that an RFC to perform "simple, routine, repetitive, concrete, tangible tasks" is consistent with the DOT's level two reasoning requirement.

"The law on this specific point is far from clear and the Ninth Circuit has not addressed it" in a published opinion. *Whitlock v. Astrue*, No. 3:10-cv-357-AC, 2011 WL 3793347, at *4 (D Or Aug 24, 2011) ("simple one to two step commands" inconsistent with Level Two reasoning) (citations omitted).  As the Commissioner acknowledges, however, several courts in the District of Oregon have rejected the Commissioner's position.  *See Whitney v. Astrue*, No. 3:10-CV-01403-HU, 2012 WL 712985, at *4-5 (D Or March 1, 2012) ("simple 1-2 step tasks" inconsistent with Level Three reasoning); *Burnsides v. Astrue*, No. 09-CV-6160-BR, 2010 WL 2730966, at *5 (D Or July 9, 2010) ("simple, routine instructions and tasks inconsistent with Level Two reasoning"); *Pope v. Astrue*, No. CV 10-6019-PK, 2011 WL 3584802, at *17 (D Or May 20, 2011) ("simple instructions" and "simple routine tasks" inconsistent with Level Two reasoning), Findings and Recommendation adopted in relevant part, 2011 WL 3567200 (D Or Aug. 15, 2011); *James v. Astrue*, No. 07-cv-6350-HA, Doc. #18 (D Or Nov. 17, 2008).   This

court concurs with these prior rulings and finds that a job requiring Level Two reasoning is

inconsistent with a RFC limited to "simple, routine tasks and instructions."

Accordingly, the VE's testimony that a person with Patton's RFC could perform the three

identified jobs conflicts with the DOT for those jobs. The deviation of the VE's testimony from

the DOT is acceptable only if the ALJ questioned the VE regarding the deviation and then

provided persuasive evidence to support the finding that Patton could perform those jobs despite

their Level Two reasoning level. However, the ALJ did not question the VE about the deviation,

and the record contains no justification for concluding that Patton is capable of performing those

jobs despite his RFC. Thus, the ALJ was not justified in relying on the VE's testimony in

making his finding at step five.

**VI.    <u>Remand</u>**

When the Commissioner's decision contains error, the court has discretion whether to

remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F3d

1172, 1178 (9th Cir), *cert. denied*, 531 US 1038 (2000). A remand for an award of benefits is

appropriate when no useful purpose would be served by further administrative proceedings or

when the record has been fully developed and the evidence is insufficient to support the

Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138-39 (9th

Cir 2011), quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004).

The current records fails to reveal what jobs may exist in the national economy within

Patton's RFC with the correct reasoning level. Thus, a remand for further proceedings is

warranted to allow the ALJ to elicit testimony from a VE to determine what work at the

appropriate reasoning level in the national economy Patton can perform.  *See Burnsides*, 2010 WL 2730966 at * 6; *Pope*, 2011 WL 3584802 at **2-3; *James*, Case No. 07-cv-6350-HA, Doc. #18 at pp. 11-12.

## RECOMMENDATION

For the reasons discussed above, the Commissioner's decision should be REVERSED AND REMANDED pursuant to Sentence Four of 42 USC 405(g) for further proceedings.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due December 10, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 21st day of November, 2012.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

19 - FINDINGS AND RECOMMENDATION